[No. 8530. Department One. February 17, 1910.]

ZONA H. CAMERON *et al., Respondents,* v. JOHN F. LYEN *et al., Appellants.*[1]

PUBLIC LANDS — RAILROAD GRANTS — RELINQUISHMENT — SETTLE-MENT. Under Act Cong. July 1, 1898, 30 Stats. 620, providing that when certain railroad lands shall be settled on in good faith prior to survey, and proof thereof made, with due relinquishment by the railroad company, the company may then select other lands in lieu thereof, it is optional on the part of the company to relinquish its rights to lands settled on subsequently to the passage of the act.

PUBLIC LANDS—DECISIONS OF DEPARTMENT—RULE OF DECISIONS. Where the equities of the settler depend upon an act of Congress, rules of the department in accord with the court's construction of the act are to be given due weight.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered May 7, 1909, upon the verdict of a jury rendered in favor of the plaintiffs by direction of the court, in an action of ejectment. Affirmed.

*Austin Mires* and *E. Pruyn,* for appellants.

*Englehart & Rigg* and *Hovey & Hale,* for respondents.

CHADWICK, J.—This action was begun by Samuel J. Cameron and Zona Cameron, his wife, and Samuel J. Cameron as administrator of the estate of William Cameron, deceased, to recover all of that portion of section 21 in township 15,

[1]Reported in 106 Pac. 1111.

north of range 19 E., W. M., lying east of the Yakima river in Kittitas county. Samuel J. Cameron died after the trial, and the case is now prosecuted by Zona Cameron, in her own behalf and as executrix of the last will of Samuel J. Cameron, and by George Donald who has since been substituted as administrator of the estate of William Cameron. The lands in controversy are within the primary limits of the Northern Pacific Railway land grant. The lands were surveyed in 1903. The defendants made settlement some time in the year 1900 and, within the time prescribed by law and the rules of the land department, offered a filing in the local land office. The filing was accepted, but the fees rejected for the reason then stated that the land was embraced in the limits of an odd numbered section in the primary limits of the Northern Pacific grant, and the matter would have to be referred to the general land office at Washington, D. C. Through some oversight or inadvertence, this was never done. After the survey, the department, having no notice of defendants' claims, passed the land to patent upon the application of the railway company. On January 3, 1905, the company sold it to Samuel J. Cameron and William Cameron. The Camerons had, for several years prior thereto, held the land under a lease from the Northern Pacific Railway Company, they having determined by private survey that the land was located in an odd numbered section and eventually subject to the Northern Pacific grant. These facts appearing from the whole evidence, the trial judge sustained a motion for a directed verdict, and judgment was entered in favor of plaintiffs.

Defendants have appealed, relying upon the act of July 1, 1898 (30 Stats. at Large, 620), known as the Northern Pacific adjustment act, but more familiarly known as the Wilson bill. The only question open for our decision is whether the provisions of that act can be held to apply to one who has made settlement upon unsurveyed land within

the primary limits of the Northern Pacific grant after July 1, 1898. The act provides:

"Whenever any qualified settler shall in good faith make settlement in pursuance of existing law upon any odd-numbered sections of unsurveyed public lands within the said railroad grant to which the right of such railroad grantee or its successor in interest has attached, then upon proof thereof satisfactory to the Secretary of the Interior, and a due relinquishment of the prior railroad right, other lands may be selected in lieu thereof by said railroad grantee or its successor in interest, as hereinbefore provided, and patents shall be issued therefor."

Appellants assert that, had their filing been transmitted to the department with proper dispatch, the company would have been compelled to adjust the differences existing between the defendants and the company under the act of 1898. It is said that the question is, not whether the section of the act which we have quoted is declaratory or mandatory, but what was the intention of Congress in passing the statute. Counsel say:

"For more than twenty years homestead settlers have gone upon the odd sections within the limits of the grant on unsurveyed lands, and the railroad company has acquiesced therein and relinquished to the Government and no question has been made until some one or two recent decisions of the land department which declare it to be optional to the company whether they relinquish any of the lands or not."

Notwithstanding all this, after a most painstaking review of every case involving the adjustment statute decided by the department, we have failed to discover anything that would warrant us in so holding. The practice, as well as the only decision based upon similar facts, is against the appellants. Had the lands been surveyed no question could arise. The department, as well as the courts, has held, in an unbroken line of decisions, that such controversy must be adjusted with reference to the conditions existing at the date of the passage of the act. Such cases come within section 1 of the act. *Northern Pac. R. Co. v. Korsmoe*, 30 Land Dec.

16; *Newkirk v. Northern Pac. R. Co.*, 32 Land Dec. 369; *In re Northern Pac. R. Co.*, 34 Land Dec. 153; *Hawthorne v. Northern Pac. R. Co.*, 37 Land Dec. 569; *Humbird v. Avery*, 195 U. S. 480. By the terms of the act it was provided that the secretary of the interior should promulgate rules of practice in order to carry the statute into effect. This was done on February 14, 1899. 28 Land Dec. 103. It was there said:

"The act designates a class of beneficiaries whose status is that of claimants adverse to the Northern Pacific Railroad Company or its successor in interest, and in doing so, different words and terms of description are used in different portions of the act, but considering the act in its entirety, and giving due recognition to each provision therein, this class embraces any qualified person who, prior to January 1, 1898, by settlement, entry, or purchase, initiated in good faith a claim to lands of the description given 'under color of title or claim of right under any law of the United States or any ruling of the Interior Department,' and who is still maintaining such claim conformably to such law or ruling."

And referring to the section we first quoted:

"The act makes *special provision* for instances where after January 1, 1898, a qualified person in good faith makes settlement, with a view to homestead entry, upon unsurveyed lands within the primary limits of said grant, which, upon survey, are found to be within an odd-numbered section to which the right of the railroad company has attached by the definite location of its line of road. The purpose of this provision is to afford relief to those who make such settlement before the identification by survey of the lands to which the railroad claimant is entitled. Such settlement claim must be continued and the right of the settler asserted after survey, by an application at the local land office to make homestead entry of the lands settled upon, accompanied by proof of such settlement and the continued maintenance of the claim. These claimants are not accorded the privilege of taking other lands in lieu of those settled upon, but if the proof submitted is deemed satisfactory the railroad claimant will be requested to relinquish the lands embraced in said claims and to take other lands. All the provisions of these regulations are

applicable to these lands, excepting those pertaining to re-
linquishments by individual claimants."

And further, in defining the status of the company under
the act:

"The railroad claim is one which arises from the definite
location of the line of railroad if the land is within the pri-
mary limits of the grant, or which arises from a lieu selec-
tion if the land is within the indemnity limits, and is one
which, in the absence of all individual claims, would enable
the railroad claimant to obtain full title to the land."

The only case in line with this one is that of *Northern Pac.
R. Co. v. Violette*, 36 Land Dec. 182. In that case Violette
had settled in 1902. The lands were surveyed and the town-
ship plat filed in 1905. There was no pending controversy
on July 1, 1898. Speaking to the point before us, Acting
Secretary Pierce, who wrote the decision, says:

"To these individual claimants the act does not extend the
right of election and transfer of the claims to other lands,
and it seems clear that they are not of the class required to
be listed with a view to demanding relinquishment of the
railway company. The contention of the company that to
hold it bound to relinquish in favor of such settlers would
amount to an open invitation to settle upon its unsurveyed
lands with a guarantee of protection, with a resulting cloud
upon the company's title and, perhaps, a bar to the disposal
of its lands, is not without force, and after a most careful
consideration of the entire act the Department is of opinion
that the proviso above quoted merely extends a privilege to
the company to select other lands for such as it may re-
linquish, upon such favorable terms as should reasonably
induce the relinquishment, and thus protect settlement made
at a time when it could not be reasonably told whether the
settler would fall upon an odd numbered or even numbered
section. . . . It follows from these considerations that the
contention of the company must be sustained and that the
provision respecting relinquishment in favor of settlements
made upon unsurveyed lands after January 1, 1898, is not
mandatory upon the company . . ."

This construction accords with the plain provisions of the
law.

We are cautioned that no court should follow the rule of
the department where it conflicts with the equities of the
settler. The equities of the settler depend, like the rights
of the grantees of the company, upon the act of Congress,
and so long as the rules, practice, and decisions of the de-
partment accord with the act as we interpret it, and finding
no authority to the contrary, we feel bound to give depart-
mental rulings such weight as they are entitled to. We hold
the relinquishment on the part of the company was optional.

The judgment of the lower court is affirmed.

Rudkin, C. J., Fullerton, Gose, and Morris, JJ., concur.